Smith, J.
This was an application to the Court of Sessions for a writ of mandamus, to be directed to Samuel J. Thurston, and others, managers of the election for sheriff in Georgetown District, held on the second Monday and Tuesday of January, 1814, in pur *492 suance the act of the general assembly of the 15th of December, 1808 ; and requiring them to return the said election void, &c., when, in fact, they had already returned Richard Shackleford duly e^ectet^ j who, under that return, had been commissioned by the governor. The second section of the foregoing act prescribes the mode by which contested elections are to be decided. It gives this power to the managers, constitutes them a complete court, and authorizes and impowers them, not only to hear, but also to determine any such contested election. From their decision, no appeal is given. But from the act, it manifestly appears that the legislature intended the managers to compose a tribunal, whose decision should be final and conclusive, in cases of contested elections. In favor of the present applicant, they did hoar and determine; and because in the exercise of that judicial power, they decided against him, he applies for a writ of mandamus, with a view to correct that decision.
The writ of mandamus is a very efficacious one, but it cannot be applied in all cases. If the managers had refused, or neglected to make a return, the Court of Sessions would then have been competent to grant the mandamus to compel a return. But when they have made a return, they have already done every thing which the Court of Sessions could have compelled them to do. Whether that return was founded on a just and fair decision between the candi, dates litigant, is not for this court to determine, through the medium of a writ of mandamus. The Court of Sessions has a general superintending power over all courts of inferior jurisdiction, but this power is given sub modo. It never was intended, nor is there a case to be found, where the Court of Sessions have reviewed the judicial decisions of an inferior court, by a writ of mandamus. I am, therefore, of opinion, that the rule ought to be discharged.
Bay, J.
Upon the return of the rule in this case, the sheriff, Mr. Shackleford, produced to the Circuit Court, Judge Grimke presiding, the governor’s commission under the seal of the State, nominating and appointing him sheriff of Georgetown district, in which, it was stated that the commissioners of the election had returned to the governor, that he had been duly elected, having the greatest number of votes ; wherefore, the governor had duly commissioned and appointed him sheriff of said district. The presi. ding judge deemed this a good and sufficient return, and refused to grant the writ of quo warranto. This was an appeal from the de-cisión of the Circuit Court, on a motion to reve'rse the decision below, and to grant the writ above prayed for.
*493 Mr. Richardson,
in support of the motion, stated various instances of the misconduct and irregularity of some of the commissioners of the eleciion, at the different polls, and, among other things, that they had admitted some to vote, who were not entiled to it, and rejecting others, who were duly qualified ; that at some of the polls, a sufficient number of commissioners did not attend to receive the votes; &c., and that proper notice had not been given of the time of election. For these reasons he contended, that the whole proceedings ought to be annulled, and the commission set aside, on the ground of great irregularity ; quoted 2 Esp. 330, 4 Burr. 2241, 5 Burr. 2682, to shew that this writ was the proper mode of trying the right to an office, when an officer had been improperly elected, and put into an office he had not a right to hold. 2 East, 177. 3 Burr. 1485. Cowp. 58. Douglas, 382. He further contended, that the governor’s commission was only prima facie evidence of a due appointment, but not conclusive, if it should appear that the election was irregular.
Mr. King, contra, said that the only question in this case is, whether the judge below was right or wrong, in discharging the rule for the quo warranto. He had no power or authority given by law to set aside the governor’s commission, and to examine witnesses, and go into a scrutiny of the election held at the different polls. It was enough for him, that the governor’s commission was produced to him under the great seal of the Stale, which set forth that the sheriff elect had been duly chosen by a plurality of the votes in the district, and duly commissioned and appointed by the chief magistrate of the State. He had no power or authority to examine any further. He was not to presume the commission was void, and that the election was irregular, when all imaginable fair, ness appeared upon the face of the commission, lie therefore contended, that the judge was well warranted in law in discharging the rule for the quo warranto. He admitted the law quoted by the attorney general, that this writ was the appropriate remedy for try. ing the right to an office, in all cases where corporate bodies were concerned, and where men intruded themselves into office, contrary to the charters of such corporate bodies ; and all the cases quoted, related to corporations, but doubted the applicability of it in cases, where commissioners are held immediately under the supreme authority of the Slate. He thought that in the latter case, this writ would not lie ; but if it did lie, the rule should have been against the commissioners of the election, or those who were the managers of it, and not against the sheriff, who was regularly sworn into pf-
*494 fice. That the present mode, if permitted, would have been trying the regularity of the managers of the election, through the sheriff, which would be contrary to every principle of law, as it would have been tryiu'g'one man ior the offences of others.
I have considered this case, and the arguments of counsel on both sides ; and am of opinion, that the decision of the judge in the Circuit Court at Georgetown, was a correct and legal adjudication. By the act of 1808, it appears to me, that the managers of the elections for sheriffs in the different districts are authorised to act both ministerially and judicially. In the first capacity, they are appointed to meet at certain places in the election districts, and to receive the votes of the citizens in behalf of the candidates, after which, they are to meet and count over the votes, and declare who is duly elected. But in case of any contest, between any of the candidates, relative to the irregularity of any election, they are, by the act, constituted judges, to hear the parties and their allegations for and against such election, and finally to determine all such cases. There is no appeal given by the act to any of the Circuit Courts, or to the governor of the State, or to any other tribunal whatever. Their decision, therefore, appears to me to be final and conclusive, and the regulation a wise and judicious one, as it will have a tendency to prevent a great source of litigation and contention throughout the State, and to put a speedy end to the choice of an officer so essential to the administration of justice, instead of prolonging a contest by further appeals, which might tend to a delay very injurious to the public interest. In the present case, it appears to me, from the commission itself, that the managers of this election, after the votes were taken, did meet, and determine who was the successful candidate, which was duly certified by them to the governor; and be, in consequence thereof, duly commissioned the defendant, Mr. Shackleford, sheriff of Georgetown district. This, therefore, in my opinion, was final and - conclusive. Where, fore, I concur with the majority of my brethren, that the present motion should be dismissed.
Nott, J.
An election had been held for sheriff of Georgetown district, pursuant to the act of 1808. The defendant having a ma. jority of votes, was declared duly elected. The relator gave notice that he should contest the election, and did so before the managers themselves, who, are authorised and empowered by the act to “hear and determine such contested election.” Upon investigation, they were of opinion the defendant ’ was duly elected, and gave him á certificate to that effect, on which, the governor gave him a commis *495 sion. The relator then applied to the court for a rule against the defendant, requiring him to shew cause why an information in the nature of a quo warranto should not issue against him, to shew by what authority he claimed to exercise the office of sheriff, and also for a mandamus against the managers. Various grounds were stated in the suggestion to shew that he had been improperly and illegally admitted into office. The defendant, on the return of the mandamus, made no answer to the facts contained in the suggestion» but merely produced a commission from the governor, and contended that it precluded all further enquiry. The presiding judge, being of that opinion, discharged the rule. An application is now made to this court to reverse that decision.
I am of opinion it ought to be reversed. ■ The grounds on which it was attempted to be supported are : ■ 1.' That the superior courts have no power to enquire by an information in the nature of a qua warranto, by what means a public officer, who is commissioned by the governor, obtained that commission; that their jurisdiction extends only to inferior officers, who act without commission, 2. That as the defendant’s right to hold and exercise the office of sheriff, depends upon the illegality of the election, and the subsequent decision of the managers, which, if erroneous, are charges against them, and not against him, it ought not to be tried until the previous question is determined on the mandamus. 3. That as the act has made the managers the judges “ to hear and determine” the question, and has given no appeal, their decision is final and conclusive.
1. It is a principle of our government, that, there can be no right without a remedy ; there can be no wrong without redress. If, therefore, We can suppose a case where a person can by fraud, violence, or corruption, get possession of a commission to which another is entitled, we must suppose there is some method by which he can be divested of it. Suppose an overwhelming mob should drive the friends of one candidate from the poll, and thereby secure the election of another ; suppose the managers corrupt enough, after the poll is closed, to take votes from the highest candidate, and give them to his competitor; or, weak and ignorant enough to reject the votes of persons qualified to vole, so as to turn the scale; will it be pretended that a commission, from the governor, is to be an impenetrable shield (o a person thus introduced into office? Such a decision would be like offering a reward for corruption. It would appear to me subversive of every legal and moral principle.
If then it may1 be enquired into, this appears to me to be the proper mode. Judge Blackstone says, a writ of qúo warritnto is ie *496 the nature of a writ of right for the king, against him who claims or usurps “ any office,” franchise, or liberty, to enquire by what authority he supports his claim, in order to determine the right. 3 Black. 203. According to this high authority, then, it lies against him who claims “any office.” And if the cases in the English books relate to subordinate officers, it is because the appointment of the higher officers belongs to the king ; and in the exercise of his discretion, he is arbitrary and uncontrolled : he not only commissions, but appoints. It is not so in this case. The governor does not appoint the officer : he only performs the ministerial duty of issuing the commission. He has no discretion, but is bound to commission whomever the managers certify to be duly elected. This proceeding, therefore, does not invade the province of the executive. If it went to interfere with the exercise of his discretion, it certainly should not meet with my support. If the objection only goes to the mode of proceeding, I should be glad that those who are opposed to this, would point out some other method. I am not attached to manner and form, so the object be effected.
2. The second ground of objection might have availed the de--fendant, if he had taken it in the court below, and it had been sup. ported by the facts. But he did not shew for cause why the infor. mation should not be awarded, that his right depended on any antecedent right, yet undetermined. Indeed, he did not shew any cause, except producing his commission. The rule, therefore, was prematurely discharged. He ought to have been required to answer all the material allegations in the suggestion. If he had admitted the truth of them, the case would have resolved itself into a question of law, and no inquiry into the antecedent proceedings would have been necessary. If he denied the facts, an issue must have been made up to try them. If he had answered, specially, that his right depended on some other right, still undetermined, the court, in its discretion, might have discharged the rule, or postponed the consideration of it until the other question had been tried.
3. But it is on the last ground that the opinion of the court ap. pears to be principally bottomed. And on this ground, it is my misfortune to differ in opinion with all my brethren. It does not follow, that because the legislature has given no appeal from the decision of the managers, the circuit court had no control over them. On the contrary, that circumstance rendered it necessary that this proceeding should be resorted to. If the act had given an appeal, that course ought to have been pursued, and no other. 2 Espin. 666. Douglas, 606. The superior courts possess a gene *497 ral superintendency over all inferior jurisdictions, derived from the common law, for which, they are not dependent on any statute. I Blacks. 84. 2 Espin. 661. By virtue of this authority, they grant writs' of quo warranto, mandamus, and prohibition, in all cases where injustice has been done by misconstruction of law, or mistake of jurisdiction, and where there is no other specific remedy. 1 Black. 84. 3 do. 110. On this subject, no case can be more strongly in point, than the case of Geter against the Commissioners for Tobacco Inspection of Campbelilown Warehouse. 1 Bay, 348. In that ease, the commissioners were authorized to hear and determine, as fully and as amply as in this case, and to remove the inspector at pleasure ; yet the court granted a mandamus to restore him to office. No case can shew more clearly the necessity oí possessing and exercising such a power, than the cases which have arisen under this act. The constitution authorizes every citizen to vote, who possesses a freehold of fifty acres of land, or a town lot, or who has resided six months in the district where he offers to give his vote. The managers undertake to exclude every person who does not possess all these qualifications. Can they not be compelled to admit such votes ? May they disfranchise whom they please ? And can there be no redress l We know that these appointments are often given to men who have not even read the constitution, and if they should read it, would not understand it. It is a truth too plain to be disguised, that they are oftentimes selected by popular leaders, on account of their zeal and attachment to a particular party, or their devotion to the views of particular individuals ; the mere ministers of faction, and slaves of political intolerance. Their fitness to hear and determine nice and difficult questions of law, is never regarded in making the appointment. It is not to be believed, that the legislature intended to confide to such a tribunal, the ultimate decision of great constitutional questions, to hang the most important rights of the citizen on their arbitrary opinions. If they are to range uncontrolled through all the vagaries of their capricious fancies, the elective franchise will become an idle mockery. It will vary in every district, according to the-views of the different managers, and fluctuate in the same district as the managers are changed, or the tide of popular opinion ebbs and flows. Thus will the constitution be blown about by every blast of popular fury, and this much boasted privilege of election, become the instrument of party violence and political intrigue. The law never intended any such thing. This court can not be deprived of its jurisdiction by implication. It is appointed by the *498 constitution to settle the law, that it may be uniform and certain, and . . / .... V . lts Powers are commensurate with the object.
Now, what are the facts alleged in this case? There are several places of election in the district. At one, the managers did not take the oath required by law. At another, they held the election but one day, where the law requires that it should have been held tw.o days. At another, only one manager attended, when the law requires that there should have been two. The managers then met, and sat in judgment on themselves, and declared all this to be regular. Thus, a man may be smuggled into office per-fas and ne-jas, and there is no redress. I can not prevail upon myself to adopt that opinion.
I do not mean to say the facts can be retried by the superior court, or that the managers can be controlled in any matter referred to their discretion. It is not a matter of discretion, whether a person shall be permitted to enjoy a privilege allowed him by the constitution. It is not a matter of discretion, whether the managers of elections shall obey a positive law. When the law enjoins the performance of a particular duty on an inferior court, it must be performed according to the law. If the law is doubtful, it belongs to this court to settle it, and that court has nothing to do but obey. The law would never be settled, if every inferior court might adopt its own construction. Indeed, we should have neither law, nor constitution. Judge Blackstone, speaking of the superintending power of the Court of King’s Bench over the other courts in the kingdom, says, “ if these courts either refuse to allow acts of parliament, or will expound them in any other sense than what the common law puts upon them, the king’s court at Westminster, will grant a prohibition to restrain them. 1 Black. 84. So in this State, where any subordinate tribunal shall obviously misconstrue any provision of the constitution, or act of the legislature, the superior courts will lend their aid to correct the error, in any way best calculated to effect the object.
I am not disposed to condemn the managers in this case. They may have acted correctly. The allegations in the suggestion may not be true. But the case ought-to have been investigated. The rule ought not to have been dismissed, without a hearing. The de-cisión, therefore, ought to be reversed.